1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>JEREMY DONAGAL,<br><br>      Defendant. | CASE NO. CR 14-00285-JST (KAW)<br><br><br>**ORDER GRANTING UNITED STATES'**<br>**MOTION FOR DETENTION** |

## INTRODUCTION

The United States has moved for the detention of defendant Jeremy Donagal pending trial. Defendant has been charged with numerous counts of conspiracy to manufacture, distribute, and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, with the manufacture, distribution, and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), with the sale of counterfeit drugs, in violation of 21 U.S.C. § 331(i)(3), and with international money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 1956(a)(2)(B)(ii). Because Defendant poses a risk of flight and a danger to the community, and because no condition or combination of conditions will reasonably assure his appearance in court or assure the safety of the community, the Court orders that he be detained pending trial.

**LEGAL STANDARD**

**I.**     **There is a Presumption in Favor of Detention in the Bail Reform Act In This Case**

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq*., there is a presumption that a defendant should be detained pending trial in cases where there is probable cause to believe that the defendant committed a drug trafficking offense that features a maximum term of imprisonment of ten years or more. 18 U.S.C. § 3142(e)(3)(A); *United States v. Salerno*, 481 U.S. 739, 750 (1987); *United States v. Koon*, 6 F.3d 561, 566 (9th Cir. 1993). Where the presumption applies, the burden of production shifts to the defendant, although the burden of persuasion continues to rest with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

Even if the defendant proffers evidence to rebut the presumption in favor of detention, "the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (citation omitted). As paraphrased, the factors in Section 3142(g) are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.*; 18 U.S.C. § 3142(g). A finding that Defendant is a risk of flight must be supported by a preponderance of the evidence, while a finding that Defendant poses a danger to the community must be supported by clear and convincing evidence. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3141(f)(2)(B). In this case, both the conspiracy charge, 21 U.S.C. § 846, and the manufacture, distribution, and possession with intent to distribute charges, 21 U.S.C. § 841(a)(1), carry a maximum prison term of twenty years, and thus, there is a presumption that Defendant should be detained.

**ANALYSIS**

**I.**     **Defendant Has Not Overcome The Presumption In Favor Of Detention**

Defendant has argued that the his extensive ties to the community, lack of sophistication or ability to blend into different cultures, and the two sureties proposed in the Pretrial Services – Mitra

Kalyani and Defendant's father, Edward Donagal – are sufficient to overcome the presumption in favor of detention.  The Court disagrees.  Specifically, with respect to the proposed sureties, during the hearing on the issue of detention, the government read from what it asserted were transcripts of recorded calls between Defendant and Ms. Kalyani and Defendant and the senior Mr. Donagal.  At a minimum, these calls indicate that the proposed sureties had some knowledge of the type of activities in which Defendant was engaging.  Even if the proposed sureties never participated in Defendant's illegal conduct or assisted him with it – and the government's proffer alone does not establish that they did so – there is a strong inference that at least had an inkling what Defendant was doing.  This precludes them from serving as appropriate sureties.

Further, even had Defendant successfully rebutted the presumption in favor of detention under Section 3142(e)(3)(A), consideration of the factors under Section 3142(g) indicate that no condition or combination of conditions can be fashioned that would mitigate the risk of Defendant's flight or his danger to the community.

## II.   Defendant Should Be Detained Under The Factors In Section 3142(g)

### A.   The Nature and Circumstances of the Charged Conduct Demonstrate a Danger to the Community and a Risk Of Flight

#### 1)   Overview of Defendant's Drug Trafficking Organization

In its motion for detention, the government proffered that Defendant was the leader of an industrial drug manufacturing operation.  Under Defendant's direction, his organization produced massive quantities of pills – over a million Xanax tablets in a single week – and shipped these pills throughout the country.  The government also proffered that Defendant was responsible for the production and distribution of significant quantities of GHB, steroids, and other drugs.

The government reported that agents seized a massive amount of drugs and related contraband during this investigation:  multiple industrial pill presses and industrial mixers; over 1 million processed Xanax tablets; over 300 pounds of anabolic steroids; four pounds of suspected oxycodone pills; over four gallons of GHB; and raw materials to create millions more Xanax tablets.

The government explained that Defendant arranged for large quantities of alprazolam (Xanax) powder and pill-making equipment to be shipped from China, usually to his co-defendants or other

1    nominee addresses.  To pay for this material, he wired significant sums of cash to his connections in

2    China, often through Western Union.

3          The government asserted that Defendant sold his pills online, including using the underground

4    websites Silk Road, Silk Road 2.0, and a personal website, and he shipped drugs to 48 states.  Defendant

5    was paid by his customers in cash and in the digital currency of Bitcoins.  The government proffered

6    that agents seized over $200,000 in cash and $25,000 in Bitcoins from Defendant's operation, but it

7    claims that this figure represents a small fraction of the proceeds earned by Defendant.

8                    2)    Defendant's Offense Poses a Danger to the Community

9          Defendant has been charged with a number of drug trafficking crimes.  Further, Defendant has a

10   prior felony drug conviction, and he was on probation for another drug offense at the time he organized

11   and executed the scheme described above.  This demonstrates that he is unlikely to abide by any

12   conditions the Court could fashion under the Bail Reform Act.  The likelihood that Defendant will

13   continue to sell drugs should he be released presents a significant danger to the community.  *See United*

14   *States v. Ruben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Fulgham*, Case No. CR–0124

15   CW (KAW), 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The Senate Report states: 'The

16   Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking

17   constitutes a danger to the 'safety of any other person or the community.' Defendant's tendency to

18   repeatedly commit similar crimes shows that he poses an unmitigable danger to the community.")

19   (quoting S. REP. No. 225, 98th Cong., 1 st Sess. 23, note 7 at 13).

20         Defendant also poses a significant danger to the community by virtue of the fact that he is a

21   convicted felon, and the government proffered that he possessed an assault-style weapon with an

22   obliterated serial number.  According to the government, on the date of his arrest, agents searched a

23   storage unit that Defendant rented and into which they had observed him going numerous times.  Inside

24   the unit, agents found a significant quantity of steroids, as well as equipment that could be used in

25   processing steroids.  They also found an AR-15 style carbine rifle, complete with several loaded

26   magazines of ammunition.  The government proffered that the serial number for this weapon had been

27   obliterated.

28

3)     <u>The Penalties Associated with the Charged Crimes Create a Risk of Flight</u>

An assessment of the nature and circumstance of the charged offenses includes consideration of the penalties. *Townsend*, 897 F.2d at 995. Under 21 U.S.C. §§ 846, 841(a)(1), and 844(b)(1)(C), Defendant faces a maximum sentence of twenty years in prison for each offense. With the discovery of the firearm with the obliterated serial number, Defendant faces additional penalties as well. These sentences provide considerable incentive for Defendant to flee. *Townsend*, 897 F.2d at 995.

**B.     There is Considerable Evidence Against Defendant**

Although not the most significant factor, the Court takes into account the fact that there is a significant amount of evidence against Defendant. In addition to the seized evidence, the government has proffered that agents recorded conversations with Defendant in which he discussed and set up drug transactions. Agents also coordinated a number of controlled purchases of drugs with Defendant, including deals for Xanax pills, GHB, and steroids. Additionally, the government obtained authorization for a Title III interception of Defendant's phone. During the period of interception and during earlier recorded calls, texts, and in-person communications, Defendant openly discussed his drug operation.

**C.     The History and Characteristics of Defendant Demonstrates a Risk of Flight and a Danger to the Community**

There are several factors regarding Defendant's history and characteristics that indicate that he presents a risk of flight and a danger to the community that cannot be mitigated by any conditions that the Court might impose.

1)     <u>Defendant Was on Probation at the Time of this Offense</u>

As discussed above, Defendant has a prior felony drug conviction and was on probation for other drug offenses at the time of the conduct at issue in this indictment. Although the standard conditions of any probation are that the person not commit any additional crimes, as the government contends, and as the grand jury found probable cause to support, Defendant engaged in a significant drug trafficking operation. This raises considerable doubt whether Defendant would abide by any conditions it may impose on his behavior, including conditions designed to prevent his flight, his continued drug

trafficking, or weapons possession.

2)     Defendant May Have Access to Illicit Funds

As discussed above, the government proffered that Defendant orchestrated a large pill manufacturing operation that likely generated substantial profits – profits that were paid to him in cash or Bitcoins.  The government proffered that Defendant told another person that he had over $1 million in cash already, and he discussed a retirement plan in which he would amass $10 million in four years and retire.

The government stated that agents seized $200,000 or so in cash and $25,000 in Bitcoins from Defendant's operation, which supports the assertion that Defendant was engaged in a cash business that generated significant income.  Based on the scale of Defendant's operation and his statements about the funds available to him and the plans he had for more, there is a reasonable inference that Defendant may have access to additional funds and Bitcoins that were not seized by the government.  Those resources could help sustain him should he flee or decide to start up a drug trafficking operation once again.

3)     Defendant Presented An Assumed Identity In The Past

The possibility of flight is bolstered by the government's report that Defendant presented himself under a false identity – "Josh Trout" – and had fraudulent identification documents to support that identity.  As the government stated, Defendant rented a storage unit under the "Josh Trout" alias and provided a fraudulent "Josh Trout" California Driver License with his picture as part of the rental application.  The government proffered that Defendant also received packages of raw materials for his pill manufacturing operation under the Trout name.  Further, some of the individuals who worked for him did not know Defendant's real name, referring to him only as "Xanax King" or Josh.  This indicates that Defendant would be comfortable living under and assumed identity should he flee.

4)     Defendant Discussed the Prospect of Flight With Others in His Organization

The government reported that Defendant told an associate in the drug operation that although he had fraudulent IDs, they were not good enough for him because they were not "in the system" – that is, although they had his photograph on them, the fake IDs did not correspond to a real DMV record.  Defendant expressed his desire to obtain a "real" driver license so that he could obtain a genuine U.S.

1    passport under a different name.  While the government indicate that it did not know whether Defendant

2    was successful in this effort, this supports the argument that Defendant presents a flight risk.

3          The government also stated that Defendant had multiple discussions about transferring his

4    money into overseas accounts so he could access this money if anything happened to him, such as being

5    arrested.  Again, the government did not indicate whether Defendant was successful in this attempt, and

6    if so, to what extent.

7          The government also discussed a conversation Defendant had with an associate in which he

8    acknowledged that if he were arrested for the conduct in this case, he would be facing a considerable

9    amount of time.  The two then discussed the fact that there would be little or no deterrent to running

10   because if he fled and were caught, he would not likely face significant additional time for the flight

11   because his exposure for the underlying case was so great.  *See Townsend*, 897 F.2d at 995 (penalties

12   may increase incentive to flee).

13   **D.     Defendant Poses A Threat Poses to the Public Should He Be Released**

14         The threat posed by Defendant should he be released takes several forms.  First, Defendant has

15   demonstrated that no conditions the Court may impose will prevent him from continuing to deal drugs.

16   That represents a clear danger to the public, as both the Senate and courts have noted.  *Ruben*, 974 F.2d

17   at 586; *Fulgham*, 2012 WL 2792439, at *4.

18         Further, Defendant has demonstrated a risk to the public by possessing a firearm despite the fact

19   that he is a convicted felon.  Importantly, this was not just any weapon; he possessed an assault-style

20   rifle with an obliterated serial number and numerous loaded magazines.  The Court has a substantial

21   interest in protecting the public from the danger posed by convicted felons who possess firearms and

22   ammunition.  *See, e.g.*, *Vartelas v. Holder*, 132 S.Ct. 1479, 1489 (2012) ("Longstanding prohibitions on

23   the possession of firearms by felons, however, target a present danger, i.e., the danger posed by felons

24   who bear arms.") (citing, *inter alia*, the Omnibus Crime Control and Safe Streets Act of 1968, § 1201,

25   82 Stat. 236).

26

27

28

1

**CONCLUSION**

2     Based on the arguments by the parties, the Court finds that Defendant has not rebutted the

3    presumption under Section 3142(e)(3)(A) that he be detained.  Further, the Court finds that the

4    government proffered clear and convincing evidence that Defendant presents a danger to the community

5    by virtue of his continued drug trafficking while on probation for earlier drug offenses and by virtue of

6    his possession of an assault-style firearm with an obliterated serial number.  The Court also finds by a

7    preponderance of the evidence that Defendant presents a risk of flight.  This risk is manifest in his

8    conversations about flight should be he arrested for the conduct that led to his indictment, his desire to

9    obtain false identity documents, including a U.S. Passport, his history of using fraudulent identification

10    documents, the potential for access to illicit cash from his drug trafficking, and the possibility of

11    significant prison time because of the current charges.

12     Therefore, the Court ORDERS that Defendant be detained pending trial in this case, and shall

13    remain committed to the custody of the Attorney General for confinement in a corrections facility

14    separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody

15    pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with

16    counsel.  On order of a court of the United States or on request of an attorney for the government, the

17    person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a

18    United States marshal for the purpose of an appearance in connection with a court proceeding.

19     IT IS SO ORDERED.

20    Dated: September 8, 2014

21    HON. KANDIS A. WESTMORE

United States Magistrate Judge

22

23

24

25

26

27

28