UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JEREMY DONAGAL,<br>    Defendant. | Case No. 14-cr-00285-JST-1<br>**ORDER OF DETENTION**<br>Re: ECF No. 111 |
|---|---|

This matter comes before the Court on defendant Jeremy Donagal's "Motion for Reconsideration For Pre-Trial Release," ECF No. 111, and for review under 18 U.S.C. § 3145 of the September 8, 2014 detention order issued by the Honorable Kandis A. Westmore, United States Magistrate Judge. ECF No. 110. For the reasons set forth below, the Court will affirm Judge Westmore's detention order and deny Defendant's motion.

## I.   BACKGROUND

On May 22, 2014, a grand jury returned an indictment, charging Defendant Jeremy Donagal with conspiracy to manufacture, distribute, and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; with the manufacture, distribution, and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); with the sale of counterfeit drugs, in violation of 21 U.S.C. § 331(i)(3); and with international money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A). ECF No. 1. Donagal was arrested pursuant to a no-bail warrant on May 28, 2014. ECF No. 60. Judge Westomre held a detention hearing on June 26, 2014, ECF No. 73, and subsequently ordered that defendant be detained in custody pending trial. See id. (minutes reflecting June 26, 2014 order of detention from the bench) ECF No. 105 (September 8, 2014 written order of detention). Defendant now petitions the Court

for review of Judge Westmore's September 8, 2008 detention order.

## II. ANALYSIS

### A. Standard of Review

The Court reviews the pretrial detention order of a magistrate judge de novo. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990). Although the Court considers the evidence presented to the magistrate judge, it accords no deference to the magistrate judge's findings of fact and ultimate conclusion. Id. at 1193.

Under 18 U.S.C. § 3142(b), the Court shall release a defendant on personal recognizance or appearance bond, unless the Court "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." The Court may impose conditions that it deems necessary to guard against a defendant's flight or danger to the community. See 18 U.S.C. § 3142(c). In deciding whether conditions could reasonably assure the defendant's appearance and the safety of the community, the Court evaluates four factors: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). To prevent a defendant's release, the government must prove that a defendant is a danger to the community by clear and convincing evidence, or it must prove that a defendant is a flight risk by a preponderance of the evidence. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). "Doubts regarding the propriety of release are to be resolved in favor of defendants." United States v. Townsend, 897 F.2d 989, 994 (9th Cir.1990).

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq., there is a presumption that a defendant should be detained pending trial in cases where there is probable cause to believe that the defendant committed a drug trafficking offense that includes a maximum term of imprisonment of ten years or more. 18 U.S.C.A. § 3142(e)(3)(a). Where the presumption applies, the burden of production shifts to the defendant, although the burden of persuasion continues to rest with the government. United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the

defendant proffers evidence to rebut the presumption in favor of detention, "the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." Id. (citation omitted).

The Court now turns to the factors required under 18 U.S.C. § 3142(g) to determine whether conditions of release could reasonably assure defendant's appearance at trial and protect the community.

### B. Factors for Consideration

#### 1. Nature and circumstances of the offense charged

The Government alleges that Defendant is the leader of a large, industrial illegal drug manufacturing operation. Defendant's organization allegedly produced over a million illegal alprazolam (Xanax) tablets per week, as well as producing and distributing significant quantities of GHB, steroids, and other drugs. The government further proffers that Defendant arranged for large quantities of Xanax powder and pill-making equipment to be shipped from China, usually to his co-defendants or other nominee addresses. To pay for this material, he wired significant sums of cash to his connections in China, often through Western Union. The government further asserts that Defendant sold his pills online, including using the underground websites Silk Road, Silk Road 2.0, and a personal website, and he shipped drugs to 48 states. Defendant was paid by his customers in cash and in the digital currency of Bitcoins. The government proffered that agents seized over $200,000 in cash and $25,000 in Bitcoins from Defendant's operation, but it claims that this figure represents a small fraction of the proceeds earned by Defendant. At the time of his arrest, Defendant was in possession of the machinery and raw ingredients necessary to produce very considerable quantities of additional illegal drugs, as detailed below. The magnitude of the Defendant's drug manufacturing and distribution organization weigh in favor of detention.

In addition to the foregoing alleged crimes, the Court must also consider the potential sentence Defendant could receive if convicted. "Consideration of the nature of the offenses charged involves consideration of the penalties." United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990). Under 21 U.S.C. §§ 846, 841(a)(1), and 844(b)(1)(C), Defendant faces a maximum sentence of twenty years in prison for each offense. A prison sentence of this magnitude weighs in favor of a

finding of risk of flight and against detention. United States v. Nguyen, No. CR07-344RSL, 2008 WL 4163135, at *2 (W.D. Wash. Sept. 4, 2008) (finding that a potential sentence of 20 years created a flight risk); United States v. Tierney, No. CR 09-68-VBF-13, 2010 WL 1929828, at *2 (C.D. Cal. May 10, 2010) (same).

### 2. Weight of evidence

The weight of the evidence is not the most important factor in the Court's analysis, but there is a significant amount of it. During its investigation, the Government seized six industrial pill presses, including multiple "rotary" presses capable of stamping out tens of thousands of pills per hour; two industrial mixers; roughly 1.3 million Xanax tablets; over 300 pounds of anabolic steroids; four pounds of suspected oxycodone pills; over four gallons of GHB; roughly 13 kilograms of alprazolam powder (estimated by the Government to produce approximately 3.9 million Xanax tablets); an estimated 4,500 kilograms of binding agent, sufficient for the manufacture of over 28 million Xanax tablets; and other materials. Agents also seized a substantial amount of cash proceeds from Defendant's drug organization. In addition to the seized evidence, agents recorded conversations with Defendant in which he discussed and set up drug transactions. Agents also coordinated a number of controlled purchases of drugs with Defendant, including deals for Xanax pills, GHB, and steroids.

### 3. History and characteristics of defendant

In addition to the foregoing facts, there are other facts pertinent to the Court's consideration of whether Defendant presents a flight risk or a danger to the community.

First, the Defendant appears to have access to large amounts of cash. The government recorded a conversation with a confidential informant in which the Defendant stated he had accumulated $1.17 million, the vast majority of which is now unaccounted for. As previously noted, in a finite slice of time, the Government seized approximately $200,000 in cash related to transactions conducted by Defendant's organization, which tends to corroborate Defendant's ability to accumulate cash. And although Defendant now claims not to have access to cash or its equivalent, the Government contends without opposition that Defendant's wife removed the contents of a safe deposit box immediately after his arrest. These facts in combination lead to the

1   conclusion that Defendant is likely to have available resources to flee, should he wish to do so.

2   Second, the Defendant was on probation at the time of his arrest. Non-compliance with probation supports a finding that the defendant is a flight risk, because it demonstrates defendant's unwillingness or inability to comply with court-ordered conditions of release. See <u>United States v. Masters</u>, No. 2:12-CR-00145-MMD, 2012 WL 4612665, at *3 (D. Nev. Oct. 1, 2012) (considering non-compliance with probation as a factor in determining flight risk); <u>United States v. Velasquez</u>, No. CR-13-70280 MAG, 2013 WL 1195708, at *3 (N.D. Cal. Mar. 22, 2013) ("the fact that [defendant] was on probation at the time of the instant offense," among others, "show[s] that he is a risk of flight and is not amenable to supervision"); <u>United States v. Malicek</u>, No. SA CR 08-275 AHS, 2008 WL 4962850, at *1 (C.D. Cal. Nov. 19, 2008) (same).

Third, the Defendant was using an assumed name in some transactions at the time of his arrest. Defendant rented two storage units under the alias "Josh Trout," and provided a fraudulent "Josh Trout" California Driver License with his rental application. Defendant also received packages of raw materials for his pill manufacturing operation under the Trout alias. Further, several of the individuals who worked for Defendant did not even know his real name, referring to him only as "Xanax King" or as Josh.

Defendant argues that his fake ID "was not, and *could* not have been used to obtain a passport, line of credit, or anything else requiring a social security number or DMV check." ECF No. 4 (emphasis in original). The Court is not persuaded by this argument. The danger is not that Defendant will use his false identification to obtain yet another one – the danger is that he will use the one he already has. His existing false driver's license would be sufficient to make it difficult to find him. And even if the issue were his ability to obtain additional fraudulent identification, his possession of a fake driver's license shows that he knows how to accomplish that goal.

### 4. Nature and seriousness of danger to the community

Accepting the Government's proffers, there is substantial evidence in this case that Defendant poses a danger to the community. Defendant is the head of an organization that manufactures and distributes large quantities of Xanax, and also deals GHB and oxycodone. At the time of his arrest, the Government seized 1.3 million Xanax tablets, over 300 pounds of

anabolic steroids, four pounds of suspected oxycodone pills, and over four gallons of GHB, as well as the ingredients to make several million more Xanax pills. Defendant possesses the specialized machines and binding agent necessary for pill manufacture. The Government's evidence also includes the participation of dozens of individuals, international importation, and the use of bitcoin currency. The scope and sophistication of the alleged enterprise support a finding that Defendant is a danger to the community. See United States v. King, 849 F.2d 485, 488 (11th Cir. 1988) (defendant was "alleged to be the leader of a high volume and extremely profitable cocaine distribution scheme which delivered multi-kilogram quantities of cocaine between various points in the southeastern United States," and bank records, telephone records and other evidence showed that defendant "was responsible for directing several drug couriers who participated in the distribution scheme").

The risk that Defendant would persist in drug manufacture or distribution while on pre-trial release is not speculative. Defendant already has one conviction for a drug-related offense – specifically, having under his or her management or control a building or room used for the purpose of unlawfully manufacturing, storing, or distributing a controlled substance for sale or distribution. Cal. Health & Safety Code § 11366.5.[1] Also, as previously noted, the Defendant was on probation at the time of his arrest. Thus, the Defendant has a demonstrated inability to comply with the conditions of court-ordered release. These facts support a finding that Defendant is a danger to the community.

## CONCLUSION

Based on the foregoing, the Court concludes that the Government has met its burden of showing by clear and convincing evidence that Defendant is a danger to the community, and showing by a preponderance of the evidence that Defendant is a flight risk, and that Defendant has not overcome the presumption that "no condition or combination of conditions will reasonably assure [his] appearance." 18 U.S.C. §3142(e). The Court orders that Defendant be detained

---

[1] Defendant was originally convicted of a felony violation of § 11366.5, but the Court accepts Defendant's representation that it was reduced to a misdemeanor upon Defendant's completion of probation.

pending trial.

Defendant's motion is denied.

**IT IS SO ORDERED.**

Dated:  November 18, 2014

_____
JON S. TIGAR
United States District Judge