BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6840
    FAX: (415) 436-7234
    Email: kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 14-0285 JST |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JEREMY DONAGAL, | Date: September 25, 2015<br>Time: 2:00 pm |
| Defendant. | Hon. Jon S. Tigar |

**INTRODUCTION**

The defendant, Jeremy Donagal, stands before the Court to be sentenced following his guilty plea to Counts Three, Six, and Eight of the captioned Indictment charging him with the manufacture, distribution, and possession with intent to distribute a controlled substance (Xanax), in violation of 21 U.S.C. § 841(a)(1), with the sale of counterfeit drugs, in violation of 21 U.S.C. § 331(i)(3), and with international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A). The government submits this sentencing memorandum to inform the Court that it has no objections to the Presentence Report (PSR) and to recommend that the Court sentence Defendant to a term of 70 months in custody and three years of supervised release, the sentence agreed to by the parties in the plea agreement.

**DEFENDANT'S OFFENSE CONDUCT**

Defendant was the architect and leader of an operation that manufactured and distributed massive quantities of alprazolam tablets throughout the United States. Defendant's pills were designed to mimic the alprazolam tablets produced by Pfizer, Inc. under the Xanax brand name. Defendant advertised these drugs through the Internet on the Silk Road website, on the Silk Road 2.0 website, and on his personal website, www.xkloves.us. Individuals placed orders for alprazolam tablets through the Internet, and Defendant's employees manufactured the tablets, packaged the orders, and then shipped the tablets through the U.S. Mail to those customers. Defendant hired more than five individuals to work for him, including the co-defendants in this case. They received packages of raw materials, such as alprazolam, from China; they received packages of cash from customers; they mixed the raw materials to make the tablets; they operated industrial pill presses at a location Defendant rented at 1717 Solano Way in Concord, California, to manufacture the tablets; and they packaged and shipped completed orders of alprazolam tablets to Defendant's customers. At its height, Defendant's operation manufactured and distributed well over 1,000,000 alprazolam tablets in a single week, and Defendant sold these tablets for between $.50 and $1.00 per pill, depending on the quantity of the order.

Although he advertised his tablets as having even more alprazolam than Pfizer's Xanax bars, Defendant made his tablets appear as identical as possible to the Pfizer product, so an end user receiving them from his customers would not be able to distinguish them from the genuine medication.

In order to receive alprazolam powder and the equipment needed to manufacture the pills, Defendant wired money to China through Western Union. After Western Union refused to place his wires because of the volume of his transactions, Defendant directed others to wire money to China on his behalf, again using Western Union. Defendant directed them to wire at least $70,000 to China for the purpose of obtaining alprazolam powder, material that he needed to continue manufacturing and selling the alprazolam tablets.

**SENTENCING GUIDELINES CALCULATION**

Pursuant to the parties' plea agreement, the Sentencing Guidelines calculation for Defendant's convictions based on the money laundering charge, Count Eight, as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level: (U.S.S.G. § 2S1.1(a)(2)) | | 8 |
| | (U.S.S.G. § 2B1.1(b)(1)(E) – more than $70,000) | | +8 |
| b. | Specific Offense Characteristics: (U.S.S.G. § 2S1.1(b)(1)(B)(i) – offense involved the manufacture, importation, or distribution of a controlled substance) | | +6 |
| | (U.S.S.G. § 2S1.1(b)(2)(B) – defendant was convicted under 18 U.S.C. § 1956) | | +2 |
| c. | Aggravating Role: (3B1.1(a) – Defendant was the organizer or leader of a criminal activity that involved 5 or more participants) | | +4 |
| d. | Acceptance of Responsibility: (U.S.S.G. § 3E1.1(a)(b)) | | -3 |
| e. | Adjusted Offense Level: | | 25 |

The Probation Officer correctly determined that Defendant merits a criminal history calculation of III. PSR ¶¶ 56-61. With an adjusted offense level of 25, this results in a range of 70-87 months. In the plea agreement, however, the parties agreed to a sentence at the low end of this range, or 70 months, and the government respectfully requests that the Court impose as sentence consistent with that agreement.

## SECTION 3553(A) FACTORS

The factors listed under 18 U.S.C. § 3553(a) indicate that a term of 70 months in custody and three years of supervised release is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors in this case are the history and characteristics of the defendant, 3553(a)(1); the need for the sentence to afford adequate deterrence, 3553(a)(2)(B); and the Guidelines range established for this type of crime and the defendant's criminal history, 3553(a)(4)(A)(i).

With respect to Defendant's history and characteristics as well as the issue of deterrence, Defendant has a criminal history that features a felony conviction for maintenance of a premises for the unlawful manufacture or storage of controlled substances. PSR ¶ 57. That offense involved a sophisticated indoor marijuana cultivation operation, with multiple locations. *Id.* Defendant also has a misdemeanor conviction for possession of methaqualone, which was pleaded down from an arrest for possession of a controlled substance for sale. PSR ¶ 58. Defendant was on probation for the latter

conviction at the time he engaged in the current offenses. PSR ¶ 60. In both cases, Defendant received light sentences, 17 days' jail and six days' jail, respectively, as well as three years' probation for each conviction. PSR ¶¶ 57-58. This failed to deter Defendant from further criminal activity.

In fact, Defendant may have been emboldened to engage in an even larger and more sophisticated operation. Defendant went from a local indoor cultivation operation to an enterprise where he imported manufacturing equipment and raw materials from China, manufactured and shipped massive quantities of drugs throughout the United States, received shipments of cash for those drugs, and laundered that money back to China for additional raw materials.

While the light sentences he received for his prior convictions failed to prevent new crimes, the agreed-upon 70 month term should provide a deterrent effect. The length of time, not only in custody, but also separated from his family, will serve as a powerful counter to any recidivism. It will also effect general deterrence to others considering this type of criminal conduct, even on a lesser scale than Defendant.

With respect to the range provided by the Guidelines, in some ways, the Guidelines range captures only a portion of Defendant's criminal conduct. The range the parties ask the Court to apply to Defendant's conduct is based on the money laundering offense, and not the drug trafficking, and it represents only $70,000 laundered to China as part of Defendant's operation. It is likely that Defendant laundered significantly more money, based alone on the fact that he carried out so many wires to China that Western Union banned him, requiring that he hire others to make the wires for him.

At the same time, however, Defendant should be rewarded for the manner in which he accepted responsibility. Among the reasons the Court should accept the proposed Guidelines range – and should impose a sentence at the low end of that range – is that Defendant accepted responsibility and pleaded guilty without substantial litigation. He did not challenge the wiretap that led to significant evidence against him. He did not seek suppression of evidence gained through search warrants. And he did not seek disclosure of any of the confidential informants who are listed in the materials submitted in support of the wiretap. These facts support the parties' request for a low-end sentence.

**CONCLUSION**

In full consideration of Defendant's history and characteristics, together with the goals of sentencing, the United States respectfully requests that the Court sentence Defendant Jeremy Donagal to a term of 70 months in custody, followed by three years of supervised release and a $300 special assessment.

DATED: September 22, 2015                    Respectfully submitted,

                                             BRIAN J. STRETCH
                                             Acting United States Attorney

                                             _____/s/_____
                                             KEVIN J. BARRY
                                             Assistant United States Attorney