1                    IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DIVISION OF CALIFORNIA

3                        SAN FRANCISCO DIVISION

4
     UNITED STATES OF AMERICA,            )    14-CR-00285-JST-1
5                                         )
                    PLAINTIFF,            )    SAN FRANCISCO, CA
6                                         )
          VS.                             )    SEPT. 25, 2015
7                                         )
     JEREMY DONAGAL,                      )    PAGES 1-29
8                                         )
                    DEFENDANT.            )
9

10

11                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE JUDGE JON S. TIGAR,
12                    UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:   UNITED STATES ATTORNEY'S OFFICE
     UNITED STATES         BY:  KEVIN BARRY, ESQ.
16                         450 GOLDEN GATE AVENUE
                           SAN FRANCISCO, CA 94102
17

18   FOR THE DEFENDANT:  GARCIA, SCHNAYERSON & THOMPSON
                          BY:  JESSE J. GARCIA, ESQ.
19                        225 W. WINTON AVE., STE. 208
                          HAYWARD, CA  94544
20

21
     PRO-TEM COURT REPORTER:        KIM THORPE, CSR
22                                  CERTIFICATE NUMBER 9318

23               PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                     TRANSCRIPT PRODUCED WITH COMPUTER
24

25

26

27

28

```
1
2    SAN FRANCISCO, CALIFORNIA                    SEPT. 25, 2015

3                      P R O C E E D I N G S

4

5         (WHEREUPON, COURT CONVENED AND THE FOLLOWING
6    PROCEEDINGS WERE HELD:)

7

8         THE CLERK:  CALLING CRIMINAL CASE 14-285, UNITED
9    STATES OF AMERICA VERSUS JEREMY DONAGAL.  COUNSEL, ONCE THE
10   DEFENDANT IS PRESENT, WILL YOU PLEASE MAKE YOUR APPEARANCES.
11        MR. BARRY:  KEVIN BARRY ON BEHALF OF THE UNITED
12   STATES.
13        MR. GARCIA:  JESSE GARCIA.  I'M APPEARING WITH AND
14   ON BEHALF OF MR. DONAGAL.  HE'S PRESENT IN CUSTODY.
15        THE COURT:  GOOD AFTERNOON, MR. DONAGAL.
16        MS. GOLDSBERRY:  JESSICA GOLDSBERRY WITH THE
17   PROBATION OFFICE.
18        THE COURT:  GOOD AFTERNOON, MS. GOLDSBERRY.  THE
19   MATTER IS ON CALENDAR THIS MORNING FOR IMPOSITION OF SENTENCE.
20      MR. DONAGAL PREVIOUSLY ENTERED A PLEA AGREEMENT PURSUANT
21   TO RULE 11C1C.  I READ THE FOLLOWING DOCUMENTS TO GET READY
22   FOR THIS AFTERNOON'S HEARING.  I READ MS. GOLDSBERRY'S WRITTEN
23   PRE-SENTENCE REPORT.  I READ THE SENTENCING MEMORANDA
24   SUBMITTED BY BOTH PARTIES.
25      I READ THE SENTENCING MEMORANDUM ADDENDUM SUBMITTED BY
26   MR. GARCIA YESTERDAY, AND I SHOULD TELL THE PARTIES I HAVE
27   SOME HESITATION ABOUT THIS PLEA AGREEMENT.  I HAVEN'T BEEN IN
28   THAT SITUATION BEFORE, BUT I AM THERE NOW.
```

1        DOES ANYONE EXPECT TO CALL TO THE MICROPHONE ANYONE

2   OTHER THAN THE LAWYERS AND THE DEFENDANT?

3        MR. BARRY:  NO ONE FROM THE GOVERNMENT, YOUR

4   HONOR.

5        MR. GARCIA:  NOT ON BEHALF OF MR. DONAGAL, NO, YOUR

6   HONOR.

7        THE COURT:  MS. GOLDSBERRY, IS THERE ANYTHING THAT

8   YOU WOULD LIKE TO ADD ON BEHALF OF PROBATION OTHER THAN WHAT

9   IS CONTAINED IN THE PRE-SENTENCE REPORT?

10        MS. GOLDSBERRY:  I WAS SPEAKING WITH MR. GARCIA

11   BEFORE COURT.  THERE WILL BE ONE CHANGE TO THE REPORT IF THE

12   COURT IS AGREEABLE TO THAT.  DO WE WANT TO DISCUSS THAT NOW

13   OR --

14        THE COURT:  LET'S TALK ABOUT IT NOW BECAUSE THE NEXT

15   THING I WAS GOING TO DISCUSS IS MR. GARCIA'S OBJECTION TO THE

16   CRIMINAL HISTORY CALCULATION, SO WE ARE GOING TO BE TALKING

17   ABOUT THE REPORT ANYWAY.

18        MS. GOLDSBERRY:  SURE.  THE FIRST COMMENT WHICH I

19   AGREE TO MAKE IS MR. GARCIA HAD ASKED THAT A LINE BE ENTERED

20   ON C -- IT WAS PAGE 9 OR PAGE 10, THE TOP OF PAGE 10 -- ABOUT

21   THE FIREARM THAT WAS FOUND -- RIFLE THAT WAS FOUND, THE

22   DEFENSE HAD ASKED THAT I ADD A LINE ABOUT THAT FIREARM COULD

23   BE ACCESSIBLE TO OTHER PEOPLE BECAUSE OTHER PEOPLE WERE IN AND

24   OUT OF THAT STORAGE UNIT.

25        THE COURT:  ALL RIGHT.  AND I GATHER THAT LANGUAGE

26   WOULD GO IMMEDIATELY BEFORE THE LAST SENTENCE ON CARRY --

27   AFTER PARAGRAPH 36.

28        MR. GOLDSBERRY:  SURE.  AFTER AMMUNITION.

1          THE COURT:  MR. BARRY, ANY COMMENT ABOUT THAT?

2          MR. BARRY:  THAT IS FACTUALLY ACCURATE, YOUR HONOR.

3     THERE IS NO OBJECTION TO THAT ADDITION.

4          THE COURT:  ALL RIGHT.  THE COURT WILL ADOPT THAT

5     CHANGE.

6          MS. GOLDSBERRY:  AND THERE WERE SOME OBJECTIONS TO

7     THE CRIMINAL HISTORY PORTION AS FAR AS PARAGRAPH --

8          MR. GARCIA:  65.

9          MS. GOLDSBERRY:  65, SO THE 9-27-2011 WE DID AGREE

10    THAT WAS RELATED TO ONE OF THE CONVICTIONS AND DIDN'T

11    NECESSARILY NEED TO BE LISTED AS A SEPARATE ARREST.  THAT WAS

12    RELATED TO THE PARAGRAPH 58, THE STANISLAUS COUNTY CONVICTION.

13    IT WASN'T A NEW ARREST.

14         THE COURT:  YES.  ALL RIGHT.

15         MS. GOLDSBERRY:  SO I WOULD BE AGREEABLE TO TAKE OUT

16    THAT PARAGRAPH.

17         THE COURT:  THAT IS PARAGRAPH 65.

18         MS. GOLDSBERRY:  65, YES.

19         THE COURT:  MR. BARRY, ANY COMMENT?

20         MR. BARRY:  NO, YOUR HONOR.  THAT IS FINE WITH THE

21    GOVERNMENT.

22         THE COURT:  ALL RIGHT.  THAT WILL BE THE COURT'S

23    ORDER.

24         MS. GOLDSBERRY:  AS FAR AS PARAGRAPH 64, THAT CHARGE

25    IS LISTED IN HIS RAP SHEET.  I DON'T HAVE ANY REASON TO

26    BELIEVE IT IS NOT HIM.

27         THE COURT:  ALL RIGHT.  MR. GARCIA, FURTHER COMMENT

28    REGARDING THE CRIMINAL HISTORY CALCULATION?

1    MR. GARCIA:  AGAIN, YOUR HONOR, AS REFLECTED IN MY

2  SENTENCING MEMORANDUM, ALTHOUGH 64 OR 65 AFFECT HIS POINT

3  COUNT, 64, AND IN MY DISCUSSION WITH MS. GOLDSBERRY,

4  MR. DONAGAL TAKES THE POSITION THAT THAT PERSON ISN'T HIM.

5    UNFORTUNATELY WHEN I WENT TO CONTRA COSTA COUNTY TO PULL

6  THAT FILE, THAT FILE IS NO LONGER AVAILABLE TO REVIEW, SO I

7  HAVE NO INDEPENDENT WAY OF EVALUATING THAT ENTRY IN THE RAP

8  SHEET THAT WAS I THINK RELIED ON BY MS. GOLDSBERRY.

9    THE COURT:  I SEE -- ALL RIGHT.  I THINK I AM

10  COMPELLED TO OVERRULE THE OBJECTION.

11    MR. GARCIA:  I UNDERSTAND THAT, JUDGE.

12    THE COURT:  ALL RIGHT.  ARE THERE ANY OTHER ISSUES

13  REGARDING THE PRE-SENTENCE REPORT ITSELF AND WHETHER THE COURT

14  SHOULD ADOPT IN ITS CURRENT FORM?

15    MR. BARRY:  NOT FROM THE GOVERNMENT, YOUR HONOR.

16    MR. GARCIA:  NOT ON BEHALF OF MR. DONAGAL, NO, YOUR

17  HONOR.

18    THE COURT:  THE COURT WILL ADOPT THE PRE-SENTENCE

19  REPORT WITH THE MODIFICATIONS I ORDERED A FEW MOMENTS AGO.

20    MR. BARRY:  SORRY.  IF THE COURT IS TO IMPOSE THE

21  SENTENCE, THE ONLY ADDITION THE GOVERNMENT WOULD WANT WHEN IN

22  IMPOSING THE SENTENCE WOULD BE THE ADDITION OF THE FORFEITURE

23  AGREED TO BY THE PARTIES IN THE PLEA AGREEMENT, AND I HAVE

24  ACTUALLY THE PARAGRAPH IF THE COURT WOULD READ THAT.

25    IN ADDITION TO THE JUDGEMENT WITH PROBATION, WE CAN

26  MAKE SURE IT IS IN THE JUDGEMENT, BUT I HAVE THAT FOR THE

27  COURT IF YOU WOULD LIKE -- OR IF YOU WANT TO JUST REFER TO

28  PARAGRAPH ELEVEN OF THE PLEA AGREEMENT, THAT WOULD BE FINE AS

1    WELL, BUT THAT IS THE ONLY ADDITION SHOULD THE COURT DECIDE TO

2    IMPOSE SENTENCE TODAY.

3         THE COURT:  ALL RIGHT.  THANK YOU.  OKAY.  WELL, I

4    KNOW THE PARTIES AGREE ON WHAT THEY THINK THE DISPOSITION OF

5    THE CASE SHOULD BE, BUT I HAVE SOME CONCERNS ABOUT WHETHER THE

6    PROPOSED SENTENCE IN THIS CASE IS PROPORTIONAL TO THE

7    SERIOUSNESS OF THE OFFENSE INCLUDING ALL THE RELEVANT CONDUCT,

8    AND I DON'T WANT TO -- I WANT TO BE COMPLETELY TRANSPARENT

9    WITH THE PARTIES ABOUT WHAT MY CONCERNS ARE.

10        I DON'T WANT YOU TO BE IN A SITUATION WHERE I INVITE YOU

11   TO MAKE ARGUMENT AND THEN I TELL YOU WHAT MY RULING IS AND

12   WHAT MY CONCERNS ARE AND YOU HAVEN'T REALLY HAD A CHANCE TO

13   ADDRESS THEM SQUARELY, SO I'M GOING TO TELL YOU WHAT MY

14   CONCERNS ARE, AND WHEN I DO IT, I WILL BE DOING IT SORT OF IN

15   THE WAY THAT I WOULD DO IT IF I WERE TO REJECT THE PLEA

16   AGREEMENT, SO IT WILL BE A LITTLE LONG-WINDED, BUT IT WILL

17   HOPEFULLY DO A GOOD JOB OF TELLING YOU WHAT MY THINKING IS.

18        THIS ISN'T MR. DONAGAL'S FIRST OFFENSE.  IT IS NOT HIS

19   FIRST EXPERIENCE WITH DRUG TRAFFICKING.  IT IS NOT HIS FIRST

20   EXPERIENCE WITH A LARGE-SCALE PILL OPERATION.  I DON'T REGARD

21   THIS CASE AS A DEVIATION FROM HIS PRIOR HISTORY.  I DON'T

22   THINK THAT THE PROBATION REPORT IS SUGGESTIVE OF THAT.  THAT

23   IS NOT -- THAT IS A CONCERN I HAVE, BUT IT IS NOT MY MAIN

24   CONCERN.

25        MY MAIN CONCERN IS THAT THE SCOPE AND MAGNITUDE OF

26   MR. DONAGAL'S DRUG TRAFFICKING OPERATION AS DESCRIBED IN

27   PARAGRAPHS TWENTY THROUGH THIRTY FIVE IN THE PRE-SENTENCE

28   REPORT WAS MASSIVE.

1    WHEN AGENTS SEARCHED PROPERTIES THAT WERE CONTROLLED BY

2    MR. DONAGAL, THEY RECOVERED SIX INDUSTRIAL PILL PRESSES

3    INCLUDING MULTIPLE ROTARY PRESSES CAPABLE OF STAMPING OUT TENS

4    OF THOUSANDS OF PILLS AN HOUR, TWO INDUSTRIAL MIXERS, 1.3

5    MILLION XANAX TABLETS, THIRTEEN KILOGRAMS OF ALPRAZOLAM

6    POWDER -- JUST ENOUGH TO PRODUCE ALMOST FOUR MILLION XANAX

7    TABLETS, FORTY FIVE HUNDRED KILOGRAMS OF BINDING AGENT, THREE

8    HUNDRED POUNDS ANABOLIC STEROIDS, FOUR POUNDS OF SUSPECTED

9    OXYCODONE AND UNDER FOUR GALLONS OF GHM.

10    NINETY FIVE PEOPLE ACROSS THE COUNTRY WERE ARRESTED IN

11    CONNECTION WITH THIS OPERATION AND NINE PEOPLE IN THIS

12    DISTRICT, AND WE'LL TALK ABOUT THAT FOR A SEPARATE REASON IN A

13    SECOND.

14    IN A SINGLE TRANSACTION, AS REPORTED IN PARAGRAPH 32 OF

15    THE PROBATION REPORT, THE DEA OBSERVED KENNETH COSTENINI,

16    (PHONETIC,) GO TO MR. DONAGAL'S HOUSE AND INTERCEPTED.  MR.

17    COSTENINI HAD FORTY-FIVE THOUSAND DOLLARS' WORTH OF XANAX

18    BARS.

19    IT SEEMS LIKELY TO ME THAT MR. DONAGAL CONTRIBUTED TO

20    THE CONVICTION OF THOUSANDS OF MANY THOUSANDS OF DRUG USERS

21    ACROSS THE COUNTRY, AND IN SOME WAYS THE GUIDELINES

22    CALCULATION IN THIS CASE REFLECTS THE FACT THAT ALPRAZOLAM IS

23    TREATED LESS HARSHER THAN OTHER DRUGS.

24    I DON'T HAVE A PARTICULAR VIEW ON THAT, BUT IN ITS --

25    BUT IT CONTRIBUTES ALONG WITH THE TOTALITY OF THE FACTS TO A

26    PROPOSED SENTENCE THAT I THINK UNDERSTANDS THE SERIOUSNESS OF

27    THE CONDUCT HERE.

28    ACCORDING TO PARAGRAPH 37 OF THE PRE-SENTENCE REPORT,

1    MR. DONAGAL'S ORGANIZATION SHIPPED A MILLION XANAX TABLETS A

2    WEEK, AND BEARING IN MIND THAT THE FACTS THAT I'M RECITING NOW

3    HAVE BEEN ADOPTED WITHOUT OBJECTION BY THE COURT, THESE ARE

4    THE FACTS OF THE CASE, AND THIS IS THE RELEVANT CONDUCT IN THE

5    CASE.

6         IN ADDITION TO THE CRIMINAL CONDUCT ITSELF, I HAVE ALSO

7    HAD A CHANCE BECAUSE OF THE RELATED NATURE OF THE

8    CO-DEFENDANTS' CASES TO MEET MANY OF THE PEOPLE WHO WERE

9    INVOLVED IN MR. DONAGAL'S OPERATION.

10        THEY WERE SMALL FISH.  IT IS SAD REALLY.  THEY KIND OF

11   GOT CHUMPED OUT.  I'M SURE THERE IS A BETTER WORD FOR THAT.

12   THEY WEREN'T PAID MUCH.  THEY WERE RECRUITED TO DO THINGS LIKE

13   MAINTAIN PILL PRESSES.  THEY THOUGHT THEY WERE MAKING EASY

14   MONEY.

15        I'M NOT SHIFTING ALL THEIR BAD CHOICES ON TO

16   MR. DONAGAL'S SHOULDERS, BUT HE RECRUITED THESE PEOPLE, AND

17   NOW THEIR LIVES ALSO HAVE BEEN RUINED BY FELONY CONVICTIONS,

18   AND IN SOME CASES THE CONSEQUENCES OF THOSE CONVICTIONS -- THE

19   PENALOGICAL CONSEQUENCES OF THOSE CONVICTIONS.

20        THERE IS A LOT MISSING FROM THIS CASE, AND BY WAY OF

21   EVIDENCE, I DON'T WEIGH THAT IN ANY WAY AGAINST MR. DONAGAL.

22   HE'S NOT REQUIRED TO ACCOUNT FOR THE THINGS THE GOVERNMENT

23   COULDN'T FIND, BUT THERE IS ENOUGH HERE FOR ME TO THINK THAT

24   WHEN MR. XANAX DESCRIBED HIMSELF AS THE XANAX KING ON THE SILK

25   ROAD WEBSITE, IT WASN'T PUFFERY, SO I HAVE SOME CONCERNS.

26   MR. BARRY?

27             MR. BARRY:  YES, YOUR HONOR.  LET ME BEGIN WITH THE

28   ISSUE OF ALPRAZOLAM.  ALPRAZOLAM IS ACTUALLY -- THE WAY

1     ALPRAZOLAM HAS BEEN TREATED BY THE GUIDELINES HAS BEEN AN

2     ISSUE FOR THE GOVERNMENT IN THIS CASE SINCE WE -- YOU KNOW, WE

3     STARTED TARGETING PEOPLE BECAUSE THE MAXIMUM AMOUNT -- THE

4     MAXIMUM BASIC DEFENSE LEVEL FOR ALPRAZOLAM WHETHER WE ARE

5     TALKING MILLIONS OF PILLS AS IN MR. DONAGAL'S CASE OR

6     TRILLIONS OF PILLS IS AN OFFENSE LEVEL OF TWELVE, AND THE

7     REASON FOR THAT IS THE FACT THAT ALPRAZOLAM IS A SCHEDULE 4

8     CONTROLLED SUBSTANCE, AND EVEN THE STEROIDS THAT, YOU KNOW, WE

9     HAVEN'T SEEN CONSIDERED THOSE IN THE GUIDELINES, THOSE ARE

10    SCHEDULE 3, AND THE COMBINED WEIGHT OF ALL OF THOSE DRUGS

11    GENERALLY CAN'T BE ABOVE 9.9 KILOGRAMS OF MARIJUANA.

12         NOW, ALPRAZOLAM IS NOT METH.  IF THIS WERE A METH

13    DISTRIBUTION CASE, YOU WOULDN'T BE HEARING ABOUT A

14    RECOMMENDATION OF SEVENTY MONTHS FROM THE GOVERNMENT.  AT THE

15    SAME TIME IT IS IMPLICATED IN A NUMBER OF OVERDOSES.  I THINK

16    TEN PERCENT OF ALL E.R. VISITS RELATED TO DRUGS HAVE

17    ALPRAZOLAM AS A COMPONENT GENERALLY MIXED WITH OTHER DRUGS --

18    MIXED WITH ALCOHOL, MIXED WITH SEDATIVES, SO IT IS NOT -- IT

19    IS A SERIOUS DRUG, BUT IT IS NOT ALONG THE LINES OF

20    METHAMPHETAMINE OR COCAINE, AND THE GUIDELINES DO REFLECT THAT

21    IN, YOU KNOW, HAVING THE VERY, VERY LOW CAP ON THE OFFENSE

22    LEVEL, SO IN ACHIEVING A SENTENCE WE WORKED WITH MR. DONAGAL'S

23    COUNSEL TO FIGURE OUT WHAT WOULD A JUST RESULT BE, AND THE

24    GOVERNMENT'S VIEW OF HOW DO WE GET THERE THROUGH THE

25    GUIDELINES, SO WE HAVE AN ADMISSION, AND WE CAN PROVE UP AT

26    LEAST SEVENTY THOUSAND DOLLARS' WORTH OF MONEY LAUNDERING --

27    AND MONEY LAUNDERING TO PROMOTE THE OPERATION, SO WE HAVE A

28    GUIDELINES RANGE OF SEVENTY TO EIGHTY SEVEN MONTHS FOR THE

1    MONEY LAUNDERING.

2         AGAIN, FOR THE RANGE FOR MR. DONAGAL, EVEN WITH ALL THE

3    ENHANCEMENTS FOR THE ALPRAZOLAM WOULD BE -- LET'S SEE, TWELVE

4    PLUS TWO FOR MAINTENANCE OF THE PREMISES, PLUS FOUR FOR

5    LEADER/ORGANIZER, SO THAT'S TWENTY MINUS THREE FOR ACCEPTANCE.

6         IT'S A FORTY-ONE TO FIFTY-ONE-MONTH RANGE JUST BASED ON

7    THE DRUGS ALONE, AND I AGREE WITH THE COURT THAT THAT WOULD

8    NOT BE ENOUGH, BUT I THINK, YOU KNOW, THE COURT ALSO MENTIONED

9    CHANTILAXID, (PHONETIC,) CODONE.  WELL, THE LAXIC (PHONETIC,)

10   CODONE WAS BUNK.  I THINK HE WAS RIPPED OFF BY SUPPLIERS IN

11   CHINA, AND HE MAY HAVE TRIED TO WORK WITH OXYCODONE BECAUSE OF

12   HIS HISTORY OF ADDICTION OR EVEN COULD HAVE BEEN FOR HIS

13   PERSONAL USE ALTHOUGH THAT WAS A LOT OF QUANTITY, BUT HE

14   FAILED AT THAT AND DID NOT CONTINUE THAT AS A SUCCESS -- I'M

15   SORRY -- DID NOT TRY TO CONTINUE DOING ANYTHING WITH

16   OXYCODONE.

17        HE LIMITED HIMSELF TO SCHEDULE 4 AND SCHEDULE -- SORRY,

18   AND SCHEDULE 3, CONTROLLED SUBSTANCES.  WELL, THERE ALSO WAS

19   GHP BUT AGAIN WE DIDN'T GET INTO THE TESTING OF THAT, BUT I

20   THINK THE MAIN WEIGHT OF MR. DONAGAL'S OPERATION LITERALLY IN

21   TERMS OF THE TONS OF THE BINDING AGENT AND ALSO IN TERMS OF

22   FOCUS WAS XANAX, SO THE GOVERNMENT LOOKED AT THIS AS A XANAX

23   CASE, AND ALSO -- YOU KNOW, FRAUDULENT COUNTERFIT PILL CASE

24   AND A MONEY LAUNDERING CASE, SO WE -- YOU KNOW, THE GOVERNMENT

25   WAS FACED WITH HOW TO GET TO A JUST RESULT HERE.  WHAT IS

26   GOING TO BE ENOUGH TIME, AND WE THINK SEVENTY MONTHS WILL BE

27   ENOUGH FOR A COUPLE OF REASONS.

28        THE MAIN -- ONE OF THE MAIN REASONS IS THAT EVEN THOUGH

```
1    THIS CASE WAS CHARGED LAST MAY, MR. DONAGAL HASN'T A LITIGATED
2    ANYTHING OTHER THAN THE ISSUE OF DETENTION.  THERE ARE
3    CONFIDENTIAL INFORMANTS -- MULTIPLE CONFIDENTIAL INFORMANTS.
4    SOME OF WHOM MR. DONAGAL MAY BE FAMILIAR WITH AND SOME OF WHOM
5    HE ONLY KNOWS THROUGH THE INTERNET, BUT HE DIDN'T LITIGATE ANY
6    OF THE DISCOVERY WITH RESPECT TO THEM.
7         HE DIDN'T SEEK THE DISCLOSURE OF THEIR IDENTITIES WHICH
8    IS A FREQUENT TACTIC ON SOME DEFENSE LAWYERS.  THEY WILL TRY
9    TO OUT THE CI, AND THEN RATHER THAN HAVING THE GOVERNMENT RISK
10   EXPOSING THE CI, WILL EITHER TRY TO GET US TO DROP THE CASE OR
11   NEGOTIATE A LOWER SENTENCE.
12        THAT DIDN'T HAPPEN HERE.  THERE IS A WIRE-TAP ISSUE.  A
13   LOT OF EVIDENCE FROM THE WIRE-TAP WAS USED AGAINST MR.
14   DONAGAL, AND IT IS RATHER POWERFUL, BUT HE DIDN'T CHALLENGE
15   THE WIRE-TAP.
16        HE DIDN'T SEEK TO SUPPRESS ANY EVIDENCE GAINED FROM THE
17   SEARCH WARRANTS.  HE TOOK A LOT OF TIME TO GO THROUGH THE
18   MASSIVE EVIDENCE THAT WE HAVE, BUT AT NO POINT WAS THERE AN
19   ISSUE THAT I'M GOING TO BEAT THIS CASE.
20        HE ACCEPTED RESPONSIBILITY ONCE HE HAD A GOOD LOOK AT
21   THE GOVERNMENT'S EVIDENCE, AND I THINK HE SHOULD BE CREDITED
22   FOR THAT, AND THAT IS WHY THE GOVERNMENT RECOMMENDS THE LOW
23   END OF THE GUIDELINES FOR THE MONEY-LAUNDERING CHARGES, AND
24   THEN, YOU KNOW, THE OTHER ISSUE -- LIKE HOW MUCH TIME IS GOING
25   TO BE ENOUGH, WILL A SEVENTY-MONTH TERM PROVIDE DETERRENCE TO
26   MR. DONAGAL INDIVIDUALLY, AND I WILL TALK ABOUT GENERAL
27   DETERRENCE IN A MOMENT, BUT THE MOST THAT HE HAS EVER DONE --
28   THE MOST TIME HE HAS EVER SERVED IS IN THIS CASE UP TO THIS
```

```
1    POINT.
2         YOU KNOW, THE TIME -- THE PRE-TRIAL TIME IN CUSTODY IS,
3    YOU KNOW, SEVERAL ORDERS OF MAGNITUDE MORE THAN HE SERVED IN
4    THE PAST -- I THINK IT IS THIRTEEN DAYS AND SIX DAYS.
5              THE COURT:  SEVENTEEN DAYS I THINK.
6              MR. BARRY:  SEVENTEEN DAYS WAS THE LONGEST SENTENCE
7    UP TO THIS POINT, SO MR. DONAGAL HAS ORGANIZATION SKILLS.  HE
8    HAS GOT TALENT.  HE'S A SMART GUY.  I THINK HE CAN AND WILL BE
9    INCLINED TO PUT THOSE IN DIFFERENT DIRECTIONS.  THERE WAS TALK
10   OF HIM BUILDING AN HERBAL SUPPLEMENT BUSINESS.
11        HE'S DONE BODY-BUILDING, AND THE GOVERNMENT'S VIEW IS
12   THAT WAS A FRONT FOR THE LAUNDERING OF THE MONEY THAT HE
13   RECEIVED FROM THE XANAX SALES, BUT HE STILL CAN DO SOMETHING
14   LIKE THAT ONCE HE'S OUT -- AND HE WILL BE GETTING OUT, SO THE
15   QUESTION IS HOW MUCH TIME WILL TEACH HIM THAT HE CAN'T BE HERE
16   AGAIN EVER, AND BECAUSE SEVENTY MONTHS IS SO MUCH MORE THAN
17   THE SEVENTEEN DAYS THAT HE HAS DONE BEFORE, I THINK THAT IS
18   ENOUGH OF A DETERENT FOR HIM.  NOW IS SEVENTY MONTHS ENOUGH
19   TO --
20              THE COURT:  DO YOU THINK -- MR. BARRY, HOW LONG HAVE
21   YOU BEEN IN YOUR OFFICE?
22              MR. BARRY:  SIX AND A HALF YEARS.  ALMOST SEVEN
23   YEARS.
24              THE COURT:  YOU HAVE PROSECUTED HUNDREDS OF
25   DEFENDANTS AND DRUG SALES AND DRUG TRAFFICKING CASES, HAVEN'T
26   YOU?
27              MR. BARRY:  YES, AND --
28              THE COURT:  HERE -- ANSWER MY QUESTION.
```

1      MR. BARRY:  IF I CAN ANTICIPATE WHERE THE COURT IS

2  GOING?

3      THE COURT:  NO.  PLEASE.  LET ME ASK IT.  IF YOU ARE

4  RIGHT, WE DIDN'T LOSE ANYTHING, AND IF YOU ARE RIGHT, I WOULD

5  HAVE TO ASK THE QUESTION ANYWAY.  IN THE SCOPE OF ALL THE

6  SENTENCES THAT YOUR OFFICE HAS ASKED FOR IN DRUG CASES AND THE

7  ONES THAT HAVE BEEN IMPOSED, BUT ALSO THAT YOUR OFFICE HAS

8  ASKED FOR, WHERE DO YOU THINK THIS ONE FITS IN?

9      MR. BARRY:  ON THE LOW END.  ON THE LOW END.

10      THE COURT:  WHAT MESSAGE DO YOU THINK THAT SENDS?

11      MR. BARRY:  WELL, ONE MESSAGE WOULD BE, YOU KNOW,

12  PICK YOUR DRUGS.  THE MOST -- MANY OF THE CASES THAT I HAVE

13  DEALT WITH WHERE WE HAVE SUBSTANTIAL SENTENCES ARE

14  METHAMPHETAMINE WHICH IS A MUCH MORE PERNICIOUS DRUG.  WHEN WE

15  TALK ABOUT THAT ALPRAZOLAM IS NOT A HARMLESS DRUG BUT ON THE

16  SCOPE OF IT IS MUCH MORE -- IT IS MUCH CLOSER TO THE BENIGN

17  REALM THAN METHAMPHETAMINE AND COCAINE AND HEROIN.

18      THE COURT:  NO ARGUMENT FROM ME ON THAT.

19      MR. BARRY:  THE OTHER QUESTION I THOUGHT THE COURT

20  HAD IN MIND IS, YOU KNOW, HOW DOES THIS OPERATION COMPARE TO

21  OTHER CASES THAT I HAVE PROSECUTED, AND IT IS THE MOST

22  SOPHISTICATED ONE THAT I HAVE EVER SEEN.  YOU KNOW, IT SPANNED

23  FORTY EIGHT STATES IN TERMS OF CUSTOMERS.  IT WAS

24  INTERNATIONAL IN THE SCOPE IN TERMS OF RAW MATERIALS AND

25  EQUIPMENT.  IT REPRESENTED THE FIRST BIT-COIN SEIZURE EVER OF

26  THE IRS.

27      IT WAS A SOPHISTICATED OPERATION, SO IT WAS MORE

28  SOPHISTICATED THAN TWO PEOPLE IMPORTING METH AND DRIVING METH

1   UP FROM LOS ANGELES OR THE BORDER.

2           DOES THE COURT HAVE OTHER QUESTIONS ABOUT THAT?

3               THE COURT:  NO, THANK YOU.

4               MR. BARRY:  OKAY, BUT I THINK TAKING INTO ACCOUNT,

5   YOU KNOW, THE FACT THAT A SEVENTY-MONTH TERM FOR A DRUG THAT

6   WOULD RESULT IN A BASE OFFENSE LEVEL OF TWELVE I THINK IS, YOU

7   KNOW, SOME DETERRENCE LIKE EVEN WITH THIS DRUG YOU STILL CAN

8   GET A LENGTHY TERM, AND WHEN THE COURT WAS SENTENCING THE --

9   YOU KNOW, THE PEOPLE WHO WORK FOR MR. DONAGAL, YOU KNOW, EVEN

10  PEOPLE WITH LENGTHY CRIMINAL RECORDS, I THINK MR. GONZALEZ HAD

11  CHC OF, YOU KNOW, FIVE OR -- FOUR OR FIVE -- SOMEWHERE BETWEEN

12  FOUR AND SIX, AND HIS GUIDELINE RANGE WAS TWENTY FOUR TO

13  THIRTY MONTHS, AND THAT WAS BASED ON THE MAXIMUM OFFENSE LEVEL

14  FOR THE XANAX, SO YEAH, THE LESSON WOULD BE, YEAH, PICK YOUR

15  DRUG.

16          IF YOU ARE GOING TO DISTRIBUTE DRUGS, DO SOMETHING THAT

17  DOES LESS HARM THAN HEROIN, COCAINE OR METHAMPHETAMINE.  I

18  HAVE HAD -- YOU KNOW, DISTRIBUTION IN SIGNIFICANT MARIJUANA

19  OPERATIONS THAT HAVE RESULTED IN 66-MONTH TERMS OF THE

20  SOPHISTICATED MORE IN TERMS OF THE WAY THE GROWS WERE -- NOT

21  IN TERMS OF THE DISTRIBUTION.

22          IT IS A DIFFERENT OPERATION THAN WHAT WE ARE TALKING

23  ABOUT HERE, BUT YEAH, THIS WOULD BE CLOSER TO THE LOW END, BUT

24  I THINK IT IS ENOUGH TIME NOT ONLY BECAUSE OF THE DRUG THAT

25  MR. DONAGAL CHOSE, BUT ALSO THE WAY HE'S APPROACHED HIS

26  ACCEPTANCE OF RESPONSIBILITY, AND WILL WE SEE HIM AGAIN?  DOES

27  HE HAVE THE MOTIVATION AND THE ABILITY TO GET OUT OF THIS AND

28  NOT -- YOU KNOW, APPEAR BEFORE YOUR HONOR AGAIN?

1    I THINK HE DOES, AND HE DOES HAVE OPTIONS.  HE DOES HAVE

2    SKILLS, AND HE'S A SMART GUY, SO I THINK HE CAN -- YOU KNOW,

3    RE-ENTER SOCIETY AS A PRODUCTIVE PERSON AND NOT RECIDIVATE, SO

4    I THINK THERE IS HOPE FOR HIM, AND THE SEVENTY-MONTH TERM

5    REFLECTS THAT, AS WELL.

6              THE COURT:  THANK YOU.  MR. GARCIA?

7              MR. GARCIA:  WELL, YOUR HONOR, I WOULD ECHO

8    MR. BARRY'S COMMENTS TO THE COURT, AND I WOULD NOTE JUST AS A

9    QUICK ASIDE, I DON'T THINK MR. BARRY HAS A REPUTATION OF

10   COMING UP HERE AND ASKING FOR LOW-END KIND OF SENTENCES ON

11   PEOPLE WITHOUT SOME EXTRAORDINARY BASIS, AND AS HAS BEEN

12   ALLUDED TO BY MR. BARRY BECAUSE OF THE DISCOVERY THAT WAS

13   PROVIDED AND THROUGH THE CONVERSATIONS AS THE COURT MAY WELL

14   BE AWARE, MR. BARRY AND I HAVE HAD A NUMBER OF DISCUSSIONS

15   ABOUT THIS CASE OUTSIDE OF THE COURT AND CORRESPONDENCE

16   ADDRESSING A MULTITUDE OF ISSUES INCLUDING INFORMANTS, WIRE

17   TAPS AND THAT SORT OF THING, BUT I THINK EARLY ON IN OUR

18   DISCUSSIONS, I MADE CLEAR TO MR. BARRY THAT IT WAS NOT OUR

19   INTENTION TO SEEK TO DISTURB THE CONFIDENTIALITY OF THOSE

20   INFORMANTS OR TO IN ANY WAY CHALLENGE THE WIRE TAPS IN THIS

21   CASE DESPITE THE FACT THAT THERE MIGHT HAVE BEEN A COLORABLE

22   BASIS TO DO SO.

23            RATHER, MR. DONAGAL HAS FROM THE VERY ONSET EXPRESSED

24   NOTHING BUT REMORSE AND HAS EXPRESSED COMPLETE AND TOTAL

25   ACCEPTANCE OF RESPONSIBILITY IN THIS CASE, AND FRANKLY, I HAVE

26   TO SHARE WITH THE COURT, IN MY FORTY ONE YEARS I DON'T THINK I

27   HAVE EVER HAD A CLIENT WHO WAS SO GENUINELY REMORSEFUL ABOUT

28   WHERE HE HAD TAKEN HIMSELF AND WHERE HE HAD BROUGHT OTHERS AS

1    I HAVE ENCOUNTERED IN MY DEALINGS WITH MR. DONAGAL, AND I

2    THINK HE MAKES A VERY UNIQUE AND COMPELLING -- HIS MAKES A

3    VERY UNIQUE AND COMPELLING STORY, AND I THINK MS. GOLDSBERRY

4    DID A GOOD JOB OF SETTING THAT OUT IN THE PRE-SENTENCE REPORT

5    IN DISCUSSING HOW MR. DONAGAL GOT HIMSELF ADDICTED TO DRUGS

6    THROUGH HIS TREATMENT FOR ANAPLASTIC CANCER, AND HE TALKS

7    ABOUT HIS STRUGGLES WITH THAT ADDICTION AND THE SCOPE OF THAT

8    ADDICTION AND HIS EFFORTS TO HIDE THAT ADDICTION FROM HIS

9    FAMILY AND FRIENDS, AND HOW THAT GOT HIM INTO THIS POSITION,

10   BUT EVEN AS I SAID THAT, YOUR HONOR, I DO WANT TO STEP BACK

11   AND SAY THE COURT INITIALLY INDICATED THAT YOU WERE OF THE

12   OPINION THAT THIS WAS NOT MR. DONAGAL'S FIRST OFFENSE

13   INVOLVING A LARGE-SCALE PILL OPERATION, AND WITH ALL DUE

14   RESPECT TO THE COURT, I WANT TO CORRECT THE COURT.

15        THIS IS, IN FACT, MR. DONAGAL'S FIRST PARTICIPATION ON A

16   LARGE-SCALE PILL OPERATION -- BUT, NONETHELESS, YES,

17   MR. DONAGAL CREATED ASSOCIATIONS THROUGH THE DISTRIBUTION OF

18   XANAX, AND THE GOVERNMENT HAS THESE INFORMANTS, AND IN MY

19   DISCUSSION WITH MR. BARRY I'M AWARE THAT THERE ARE STILL

20   PEOPLE TO BE SEEN IN THIS COURT THAT ARE TIED TO MR. DONAGAL'S

21   OPERATION WHO PROVIDED THE GOVERNMENT WITH CRITICAL

22   INFORMATION THAT LED TO MR. DONAGAL'S INDICTMENT, BUT MR.

23   DONAGAL HAS DONE NOTHING TO TRY TO PUT RESPONSIBILITY FOR HIS

24   PARTICIPATION OR HIS INVOLVEMENT IN THIS COMPUTERIZED EFFORT

25   TO GAIN ACCESS TO THE CHEMICALS TO MAKE CONTACT WITH CHINA OR

26   TO SET UP A DISTRIBUTION NETWORK, AND MR. BARRY AND I BOTH

27   KNOW THAT THERE WERE MANY PEOPLE INVOLVED IN THIS OPERATION

28   THAT THIS COURT HASN'T SEEN.

1       THE PLEA AGREEMENT -- AND I'M HOPING THAT THE COURT CAN

2  ACCEPT THIS -- HAS BEEN THE PRODUCT OF A GREAT DEAL OF TIME

3  AND EFFORT ON THE PART OF MR. BARRY AND I TO HOPEFULLY FASHION

4  AN AGREEMENT THAT SATISFIES THE COURT -- KEEPING IN MIND THE

5  IMPORTANCE OF THE FACTORS CONTAINED IN 3553, TO GIVE

6  MR. DONAGAL A SENTENCE THAT REFLECTS THE SERIOUSNESS OF THE

7  OFFENSE BUT NO GREATER THAN NECESSARY TO ACHIEVE THOSE RESULTS

8  OF RETRIBUTION REHABILITATION.

9       MR. DONAGAL IN HIS LETTER SUBMITTED TO THE COURT, AND I

10 THINK IN COMMENTS THAT HE WISHES TO MAKE TO THE COURT TODAY,

11 RECOGNIZES THE HARM THAT HE HAS DONE.  I WOULD ECHO AGAIN

12 MR. BARRY'S COMMENTS.  THIS IS A PERSON I FULLY EXPECT THAT WE

13 WILL NEVER SEE AGAIN.

14      HE HAS REAL SKILLS.  HE HAS REAL ABILITIES AND HE HAS A

15 GENUINE -- NOT JUST AN ABILITY, BUT I THINK A DEMONSTRATED

16 ABILITY TO MAINTAIN SOBRIETY AND STAY FREE OF THE CRIMINAL

17 JUSTICE SYSTEM AND BECOME A VERY PRODUCTIVE MEMBER OF OUR

18 SOCIETY.

19         THE COURT:  THANK YOU.  MR. DONAGAL, DO YOU WANT TO

20 ADDRESS ME?

21         THE DEFENDANT:  YEAH.  I HAVE A LETTER THAT I WROTE

22 IF IT IS OKAY WITH YOU.

23         THE COURT:  SURE.  I SHOULD SAY I READ THE LETTER

24 THAT YOU DID WRITE ALREADY THAT WAS ATTACHED TO YOUR LAWYER'S

25 SENTENCING MEMORANDUM.  I READ EVERY WORD OF EVERYTHING

26 EVERYONE GIVES ME, SO IF IT IS THAT LETTER, I HAVE READ IT,

27 BUT THIS IS YOUR TIME AND YOU ARE FREE TO SAY WHATEVER YOU

28 WANT.

1        THE DEFENDANT:  IT HAS SOME OF THE SAME STUFF, BUT

2   IT'S A DIFFERENT LETTER.  IT SAYS, YOUR HONOR, I HAVE MADE

3   SOME UNACCEPTABLE MISTAKES AND HAVE NO EXCUSE FOR WHAT I HAVE

4   DONE.  MY CRIME HAS CREATED CHAOS AND DISRUPTION TO MY FAMILY

5   AND CREATED SHAME AND DISHONOR.  I HAVE BEEN A BURDEN TO THE

6   COURT AS WELL AS TO SOCIETY.  NO WORDS CAN DESCRIBE THE GUILT

7   AND SORROW I FEEL FOR THIS ACTION AND REALIZE I'M INDEBTED TO

8   THE VERY PEOPLE TO WHICH I CAUSED THIS GRIEF.

9        THIS IS THE DEBT I INTEND TO PAY IN FULL BY ACTIONS TO

10  LAW-ABIDING SOCIETY.  I WOULD LIKE YOU TO KNOW THAT DURING MY

11  LAST SIXTEEN MONTHS OF INCARCERATION I HAVE TAKEN THE TIME TO

12  EVALUATE WHAT IS CAUSING THIS NEGATIVE CYCLE IN MY LIFE.

13       I HAVE ATTEMPTED TO CORRECT THIS CYCLE BY ATTENDING THE

14  PROGRAMS OFFERED IN COUNTY JAIL AND I PLAN TO CONTINUE MY

15  REHABILITATION IN THE AMOUNT OF CONFINEMENT.  I HAVE ALSO BEEN

16  CORRESPONDING WITH ADAM STATE UNIVERSITY PRISON COLLEGE

17  PROGRAM SO I CAN TAKE BUSINESS COURSES DURING MY TIME OF

18  INCARCERATION.

19       WHAT I AM TRYING TO DO IS SET A POSITIVE FOUNDATION FOR

20  SUCCESS UPON RELEASE FROM CONFINEMENT, AND THROUGH EDUCATION

21  AND REHABILITATION I WILL HAVE NO DOUBT THAT I WILL HAVE A

22  POSITIVE TRANSFORMATION.

23       I HAVE A PLAN FOLLOWED BY ACTION, SO I HAVE PREPARED A

24  PLAN BOTH FOR THE PRESENT AS WELL AS THE FUTURE.  UPON RELEASE

25  FROM CONFINEMENT I WILL BEGIN PERSONAL TRAINING TO IMMEDIATELY

26  SUPPORT MY FAMILY.  AS FOR THE FUTURE I HAVE WRITTEN MANY

27  BUSINESS PLANS BUT THE TWO OF THEM BEING AT THE TOP OF MY

28  LIST.  ONE IS TO CREATE MEALS PREPARED FRESH AND DELIVERED TO

1    THE CUSTOMER.

2          THE OTHER IS A STEP-DOWN UNIT WITH A MEDICAL UNIT FOR

3    PATIENTS CONSIDERED TO BE IN STABLE CONDITION BUT NOT QUITE

4    READY TO BE SENT HOME.  I HAVE RESEARCHED MANY ASPECTS OF THIS

5    BUSINESS INCLUDING WHAT MEDI-CARE PAYS PER DAY PER PATIENT AND

6    THE TOTAL ALLOWANCE PER PATIENT PER DAY.

7          YOUR HONOR, BEING A HARD-WORKING, POSITIVE, LAW-ABIDING

8    CITIZEN WILL BE MY WAY OF RE-PAYING MY DEBT THAT I HAVE

9    ACCUMULATED, AND MY GREATEST SATISFACTION IN LIFE WILL BE WHEN

10   I BECOME SOMEBODY MY CHILDREN CAN LOOK UP TO.

11         MY FAMILY IS WHAT KEEPS ME GOING DAY IN AND DAY OUT.

12   OVER THE LAST SIXTEEN MONTHS OF CONFINEMENT MY THOUGHTS HAVE

13   OFTEN HAUNTED ME.  THOUGHTS SUCH AS WILL I MAKE AMENDS WITH

14   SOCIETY?  WILL I ALWAYS BE AN ADDICT?  WILL I FOREVER BE

15   REMEMBERED AS A FAILURE?  WILL I ALWAYS BE VIEWED AS A

16   DISAPPOINTMENT TO MY CHILDREN, BUT WHEN I WROTE THIS LETTER

17   THE THOUGHT BRINGS TO MIND -- BRINGS A SMILE TO MY FACE.  I

18   SMILE AT THIS THOUGHT NOT ONLY BECAUSE CHANGE IS IMMANENT BUT

19   BECAUSE I'M PREPARED FOR THE CHANGE TO COME, AND THE SMILE IS

20   FACING THE DREAM I LONG TO ACHIEVE.

21              THE COURT:  THANK YOU, MR. DONAGAL.  MR. DONAGAL, I

22   WANT TO SAY A COUPLE OF THINGS I MEANT TO SAY EARLIER.  FIRST

23   OF ALL, I HAVE A LOT OF GUYS WHEN THEY ARE DOING THEIR TIME

24   PRE-TRIAL IN ALAMEDA COUNTY DON'T DO ANYTHING.  THEY GATHER

25   TOGETHER IN A COMMON AREA AND WATCH WHATEVER THEY WATCH AND I

26   APPRECIATE THE FACT THAT YOU GRADUATED THE DEUCE PROGRAM.

27         I AM GLAD IT HELPED YOU -- EVEN IF IT DIDN'T HELP YOU, I

28   AM GLAD YOU DID IT BECAUSE THERE IS A LOT OF GUYS WHO ARE NOT

1    TAKING THAT OPPORTUNITY TO WORK ON THEMSELVES.

2              MR. GARCIA:  YOUR HONOR, IF I MAY?

3              THE COURT:  NO.  THE SITUATION WITH YOUR STEPFATHER

4    SOUNDS HARD.  I AM NOT GOING TO PUT A LOT OF WEIGHT ON IT, AND

5    I'M NOT GOING TO MAKE TOO BIG A THING ON IT, BUT THAT SOUNDS

6    HARD.

7              THE WITNESS:  IT IS NOT EASY.

8              THE COURT:  SO MR. GARCIA?

9              MR. GARCIA:  NEVER MIND.

10             THE COURT:  FAIR ENOUGH.  DOES ANYONE HAVE ANYTHING

11   FURTHER TO SAY?

12             MR. GARCIA:  SUBMITTED.

13             MR. BARRY:  NO.

14             MS. GOLDSBERRY:  NO, YOUR HONOR.

15             THE COURT:  COURT WILL TAKE A BRIEF RECESS.

16             (BREAK IN PROCEEDINGS.)

17             THE COURT:  I ACCEPT THE PLEA AGREEMENT IN THIS

18   CASE.  I STILL HAVE ALL THE CONCERNS THAT I ARTICULATED

19   EARLIER WHICH I WON'T REPEAT, BUT MR. BARRY IN HIS REMARKS

20   PERSUADED ME THAT AT BOTTOM, MANY OF MY CONCERNS ARE QUIBBLES

21   WITH THE WAY THE FEDERAL GOVERNMENT TREATS ALPRAZOLAM RELATIVE

22   TO OTHER DRUGS IN CASES INVOLVING LARGE-SCALE TRAFFICKERS LIKE

23   MR. DONAGAL, AND WHAT THIS HEARING REQUIRED ME TO DECIDE WAS

24   WHETHER I WAS PREPARED TO IMPOSE A SENTENCE ON MR. DONAGAL

25   THAT REFLECTED MY CONCERN, AND I AM NOT PREPARED TO DO THAT

26   BECAUSE I DON'T THINK IT WOULD BE FAIR.

27        I THINK ONE OF THE BIGGEST CHALLENGES FOR -- FIRST OF

28   ALL, LET ME SAY I HAVE SAID MANY TIMES BEFORE -- SENTENCING IN

1    CRIMINAL CASES I THINK IS THE HARDEST THING THAT FEDERAL

2    JUDGES DO.

3        I THINK YOU CAN TRY VERY HARD -- AND I DO TRY VERY HARD,

4    AND YOU CAN ALWAYS THINK THAT, AND YOU CAN ALWAYS BE LEFT TO

5    WONDER IF YOU DID EXACTLY THE RIGHT THING, AND I THINK ONE OF

6    THE MOST IMPORTANT CONSIDERATIONS IN SENTENCING IS WHETHER WE

7    TREAT SIMILARLY-SITUATED PEOPLE THE SAME -- NOT JUST BECAUSE

8    IT SAYS THAT IN 18 UNITED STATES CODE SECTION 3553A, AND I AM

9    REQUIRED TO CONSIDER THE FACTORS SET OUT IN THAT STATUTE, BUT

10   BECAUSE IT IS A BASIC MARK OF THE FAIRNESS OF THE COURT SYSTEM

11   THAT WE TREAT SIMILARLY-SITUATED PEOPLE THE SAME, AND IF WE

12   DON'T DO THAT, WE SHOULD HAVE A GOOD EXPLANATION.

13       PART OF WHAT I SAID BEFORE IS I SAID TO VENT SOME OF MY

14   FRUSTRATION IS THAT SOME OF THE SMALLER PLAYERS IN THIS

15   OPERATION -- THAT THE PROPOSED SENTENCE DIDN'T REFLECT WHAT

16   HAD HAPPENED TO THE SMALLER PLAYERS IN THIS OPERATION, AND

17   PART OF MY QUESTIONS TO MR. BARRY WERE DESIGNED TO GET AT THE

18   FACT THAT OTHER DRUG OFFENDERS IN THIS DISTRICT MIGHT RECEIVE

19   SANCTIONS -- ONE MIGHT EXPECT THEY WOULD RECEIVE SANCTIONS

20   THAN THE ONE THAT ARE HARSHER THAN THE ONE BEING DISCUSSED

21   TODAY, BUT THE FACT THAT REMAINS THAT OTHER ALPRAZOLAM

22   OFFENDERS IN THE COUNTRY ARE BEING SENTENCED UNDER THESE

23   GUIDELINES, AND MR. BARRY IS CORRECT THAT IF MR. DONAGAL WAS

24   SENTENCED UNDER THOSE GUIDELINES ABSENT SOME OTHER

25   CIRCUMSTANCE SET OUT IN 3553A THAT I DON'T FIND IS PRESENT

26   HERE, THE PROPOSED SENTENCE IS APPROPRIATE, SO I ACCEPT THE

27   PLEA AGREEMENT.

28       THE PARTIES HAVE ALREADY AGREED NO PARTY HAS INTERPOSED

```
1    ANY OBJECTION TO THE SENTENCING GUIDELINES CALCULATION

2    CONTAINED IN THE PRE-SENTENCE REPORT, SO I ADOPT THAT

3    CALCULATION ALSO, AND FOR THE REASONS THAT WE HAVE DISCUSSED

4    TODAY, I FIND THAT THE SENTENCE IS NOT ONLY CONSISTENT WITH

5    THE GUIDELINES BUT ALSO THE SENTENCING FACTOR SET OUT IN

6    SECTION 3553A.

7         MR. DONAGAL, IN JUST A SECOND I'M GOING TO IMPOSE

8    SENTENCE.  THAT MEANS I WILL BE READING A LENGTHY SET OF

9    REMARKS THAT ARE CONTAINED AT THE END OF A PRE-SENTENCE

10   REPORT.  MR. BARRY, I HAVE NOT FORGOTTEN YOUR REQUEST TO ALSO

11   ORDER A FORFEITURE CONSISTENT WITH PARAGRAPH ELEVEN OF THE

12   PLEA AGREEMENT.

13        IF YOU WANT TO HAND THAT LANGUAGE TO MR. NOBLE, I WILL

14   HAVE THAT IN FRONT OF ME WHEN I IMPOSE SENTENCE.  BEFORE I DO

15   THAT, MR. DONAGAL, LET ME JUST SAY A COUPLE OF THINGS.  YOU, I

16   THINK, DO HAVE A TREMENDOUS NUMBER OF GIFTS OF COMPETENCIES IN

17   THE WORLD.  YOU'RE AN ORGANIZED PERSON.  YOU'RE SMART.  YOU'RE

18   STRATEGIC.  YOU HAVE LOGISTICAL SKILLS -- I THINK.  I DON'T

19   KNOW HOW BIG THEY ARE, BUT THEY ARE BIGGER THAN THE EVIDENCE

20   IN FRONT OF ME BECAUSE I DON'T HAVE ALL THE EVIDENCE, AND THE

21   REPRESENTATION WAS BIG --  BIGGER THAN MR. BARRY THINKS THEY

22   ARE.  REALLY BIG.

23        THAT IS GOOD.  IT MEANS WHEN YOU GET OUT, IF YOU WANT

24   TO, YOU WILL BE ABLE TO MAKE A LIVING HONESTLY IN SPITE OF OUR

25   SOCIETY'S BROKEN WAY OF TREATING EX-FELONS, I WOULDN'T BE ABLE

26   TO SAY THAT TO MOST PEOPLE.  YOU WILL BE ABLE TO DO IT.  I

27   WANT THAT FOR YOU.  I HOPE YOU'RE NOT ABLE TO GET ACCESS TO

28   DRUGS WHILE YOU'RE AT PRISON.  I HOPE YOU DON'T WANT TO GET
```

1    ACCESS TO DRUGS WHILE YOU'RE AT PRISON.  THAT WOULD BE MY

2    FIRST HOPE, BUT IF YOU ARE ABLE TO, I HOPE THAT YOU DON'T.

3         FIVE YEARS OF SOBRIETY SOUNDS LIKE IT WILL BE A

4    TREMENDOUS AID TO YOU.  THE SENTENCE APPROACH IS SIX YEARS --

5    PROBABLY DOESN'T SEEM LIKE MUCH OF A BREAK TO YOU.  YOU DON'T

6    HAVE TO RESPOND TO THAT.  I'M JUST SAYING.  GIVEN WHAT I KNOW

7    ABOUT YOUR OPERATION, IT IS.  IT WOULD BE GREAT IF THIS WAS

8    ALL IN THE REAR-VIEW MIRROR.  I DON'T EXPECT YOU TO REMEMBER

9    ALL THE STUFF I'M SAYING, BUT IT WOULD BE GREAT IF YOU NEVER

10   HAD TO COME BACK.  NEXT TIME IT WOULD BE A LOT DIFFERENT.

11        PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS MY

12   JUDGMENT THAT DEFENDANT, JEREMY DONAGAN, IS HEREBY COMMITTED

13   TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE IN PRISON FOR

14   THE TERM OF SEVENTY MONTHS.

15        THIS TERM CONSISTS OF SIXTY MONTHS ON COUNT 3.  THIRTY

16   SIX MONTHS ON COUNT 6, AND SEVENTY MONTHS ON COUNT 8.  ALL

17   COUNTS ARE TO BE SERVED CONCURRENTLY.

18        MR. DONAGAL, I RECOMMEND THAT YOU PARTICIPATE IN THE

19   BUREAU OF PRISON'S RESIDENTIAL DRUG TREATMENT PROGRAM ALSO

20   CALLED ARDAD.  THAT IS ALSO PURSUANT TO YOUR REQUEST, AND I

21   RECOMMEND TO THE BUREAU OF PRISONS THAT YOU BE DESIGNATED TO A

22   FACILITY THAT HAS THAT PROGRAM.

23        AFTER YOU'RE RELEASED FROM PRISON, YOU WILL BE ON

24   SUPERVISED RELEASE FOR A TERM OF THREE YEARS.  THAT TERM

25   CONSISTS OF THREE YEARS ON EACH COUNTS 3 AND 8, AND ONE YEAR

26   ON COUNT 6.  ALL OF THOSE TERMS TO RUN CONCURRENTLY.

27        WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF BUREAU OF

28   PRISONS, YOU SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN

1    THE DISTRICT TO WHICH YOU ARE RELEASED UNLESS YOU ARE

2    DEPORTED.  WHILE YOU'RE ON SUPERVISED RELEASE, YOU ARE TO BE

3    OF GOOD CONDUCT AND OBEY ALL LAWS.  THAT MEANS THAT YOU SHALL

4    NOT COMMIT ANOTHER FEDERAL, STATE OR LOCAL CRIME.

5         YOU WILL FOLLOW THE STANDARD CONDITIONS OF SUPERVISED

6    RELEASE THAT HAVE BEEN ADOPTED BY MY COURT.  YOU WILL REFRAIN

7    FROM ANY UNLAWFUL USE OF A CONTROLLED SUBSTANCE AND YOU WILL

8    SUBMIT TO A DRUG TEST WITHIN TEN DAYS OF RELEASE ON SUPERVISED

9    RELEASE AND TWO PERIODIC DRUG TESTS THEREAFTER, AND YOU SHALL

10   ALSO COMPLY WITH THE FOLLOWING CONDITIONS:

11        NUMBER ONE, YOU WILL PARTICIPATE IN A PROGRAM OF TESTING

12   AND TREATMENT FOR DRUG ABUSE AS DIRECTED BY YOUR PROBATION

13   OFFICER UNTIL SUCH TIME AS YOU'RE RELEASED FROM TREATMENT BY

14   YOUR PROBATION OFFICER.  YOU WILL PAY ALL OR PART OF THE COST

15   OF YOUR TREATMENT IN AN AMOUNT NOT TO EXCEED ITS COST AS

16   DEEMED APPROPRIATE BY YOUR PROBATION OFFICER.

17        THOSE PAYMENTS WILL NEVER EXCEED THE TOTAL COST OF

18   URINALYSIS AND COUNSELING, AND THE ACTUAL CO-PAYMENT SCHEDULE

19   WILL BE DETERMINED BY YOUR PROBATION OFFICER.  YOU SHALL

20   ABSTAIN FROM THE USE OF ALL ALCOHOLIC BEVERAGES.  SOME PEOPLE

21   HAVE CONFUSION ABOUT WHAT THAT MEANS.  THEY THINK I CAN HAVE A

22   LITTLE ALCOHOL IN MY SYSTEM.  IT IS NOT LIKE DUI.  DUI IF THE

23   OFFICER PULLS YOU OVER, IF YOU BLOW A .04, UNLESS THEY CAN

24   PROVE YOUR DRIVING IS REALLY OFF THE CHARTS, IT IS FINE.

25        ON THIS CONDITION A .04 IS NOT FINE.  YOU WILL BE IN

26   VIOLATION OF YOUR SUPERVISED RELEASE AND SUBJECT TO SOME KIND

27   OF SANCTION.  YOU WILL PAY ANY SPECIAL ASSESSMENT THAT IS

28   IMPOSED BY THIS JUDGEMENT AND ANY AMOUNTS UNPAID AT THE

1    COMMENCEMENT OF THE TERM OF SUPERVISED RELEASE.  YOU WILL BE
2    SUBJECT TO A SEARCH CLAUSE.  THAT MEANS THAT YOU HAVE TO
3    SUBMIT TO A SEARCH OF YOUR PERSON, RESIDENCE, OFFICE, VEHICLE
4    OR ANY PROPERTY UNDER YOUR CONTROL.  OFFICE JUST MEANS
5    WORKPLACE.
6        THAT SEARCH CAN BE CONDUCTED BY A UNITED STATES
7    PROBATION OFFICER OR ANY FEDERAL, STATE OR LOCAL
8    LAW-ENFORCEMENT OFFICER AT ANY TIME OF THE DAY OR NIGHT
9    WITHOUT PROBABLE CAUSE OR REASONABLE SUSPICION.  IF YOU FAIL
10   TO SUBMIT TO A SEARCH, YOUR SUPERVISED RELEASE CAN BE REVOKED,
11   AND YOU HAVE TO WARN ANYBODY YOU ARE STAYING WITH -- ANYBODY
12   ON THOSE PREMISES THAT THE PREMISES MIGHT BE SUBJECT TO A
13   SEARCH.
14       YOU WILL HAVE TO MAKE AN APPLICATION TO REGISTER AS A
15   DRUG OFFENDER PURSUANT TO STATE LAW.  YOU WILL COOPERATE IN
16   THE COLLECTION OF DNA AS ORDERED BY YOUR PROBATION OFFICER,
17   AND YOU SHALL NOT KNOWINGLY POSSESS ANY FIREARMS, AMMUNITION,
18   DESTRUCTIVE DEVICES OR DANGEROUS WEAPONS.  ANY VIOLATION BY
19   ITSELF WOULD BE A SERIOUS CRIME IN THE UNITED STATES.
20       I WILL ALSO ORDER YOU TO FORFEIT YOUR INTEREST IN THE
21   FOLLOWING PROPERTY:  A: FOURTEEN THOUSAND, FOUR HUNDRED NINETY
22   DOLLARS IN UNITED STATES CURRENCY SEIZED FROM 212 VILLEDO
23   COURT IN MARTINEZ, CALIFORNIA ON MAY 24, 2014.
24       B, THE PROPERTY AT 212 VILLEDO COURT, MARTINEZ,
25   CALIFORNIA 94553 WHICH IS CONTRA COSTA COUNTY ASSESSOR'S
26   PARCEL NUMBER 161-172-012-7, AND:
27       C, ASSORTED PILL PROCESSES, HEAVY MACHINERY, BINDING
28   AGENTS, CHEMICALS, PACKING MATERIALS AND OTHER ITEMS SEIZED

1    FROM 1717 SOLANO WAY IN CONCORD, CALIFORNIA ON MAY 28, 2014.

2         YOU DON'T HAVE THE ABILITY TO PAY A FINE, SO I ORDER THAT

3    ANY FINE BE WAIVED, BUT I'M REQUIRED TO ORDER AND DO ORDER

4    THAT YOU PAY THE UNITED STATES A SPECIAL ASSESSMENT OF THREE

5    HUNDRED DOLLARS WHICH SHALL BE DUE IMMEDIATELY.

6         WHILE YOU ARE INCARCERATED, PAYMENT OF CRIMINAL MONETARY

7    PENALTIES ARE DUE WHILE IMPRISONED AT THE RATE OF NOT LESS

8    THAN TWENTY FIVE DOLLARS PER QUARTER, AND PAYMENT SHALL BE

9    THROUGH THE BUREAU OF PRISONS INMATE FINANCIAL RESPONSIBILITY

10   PROGRAM, THE ADDRESS LOCATED IN YOUR PAPERWORK.

11        FURTHER MATTERS FOR THE RECORD THIS AFTERNOON?

12        MR. BARRY:  YES, YOUR HONOR.  THE GOVERNMENT MOVES

13   TO DISMISS THE REMAINING COUNTS AGAINST MR. DONAGAL IN THE

14   INDICTMENT.

15        THE COURT:  THAT MOTION IS GRANTED.

16        MR. GARCIA:  YOUR HONOR, WITH REGARD TO THE

17   RECOMMENDATION REGARDING ARDAD --

18        THE COURT:  I HAD ONE MORE THING I WANTED TO SAY.

19   SORRY TO INTERRUPT YOU, MR. GARCIA.  I AM ASSUMING THAT

20   MR. DONAGAL WOULD ASK ME TO REQUEST WITH THE BUREAU OF PRISONS

21   THAT HE BE HOUSED IN THE FACILITY AS CLOSE AS POSSIBLE TO THE

22   BAY AREA SO THAT HE CAN SEE HIS FAMILY.  WELL, THEY DON'T GIVE

23   ME THE POWER TO REQUEST A SPECIFIC FACILITY.

24        MR. DONAGAL, THE WAY THIS WORKS IS THAT EVEN THOUGH I'M

25   THE SENTENCING JUDGE, I DON'T GET TO TELL THE BUREAU OF

26   PRISONS WHERE SOMEBODY IS HOUSED.  ALL I CAN DO IS MAKE A

27   RECOMMENDATION TO THE BUREAU OF PRISONS, AND THE FORM THAT

28   RECOMMENDATION TAKES ON ISSUES LIKE THIS OR ARDAD FOR THAT

```
1    MATTER, IS I CAN ASK THE BUREAU OF PRISONS TO DESIGNATE YOU TO

2    THE FACILITY CLOSEST TO THE BAY AREA CONSISTENT WITH YOUR

3    CLASSIFICATION.

4           THEY WILL MAKE A CLASSIFICATION CALL, AND THEN IF

5    THEY WANT TO FOLLOW MY RECOMMENDATION AND PUT YOU AS CLOSE AS

6    THEY CAN TO THE BAY AREA.  MR. GARCIA?

7           MR. GARCIA:  AGAIN, YOUR HONOR, YOUR COMMENTS

8    ANTICIPATED THE OTHER REQUEST THAT I HAVE WITH REGARD TO HIS

9    CLASSIFICATION.  HIS CRIMINAL HISTORY CATEGORY IS IMPORTANT IN

10   DETERMINING THAT BECAUSE UNDER THE SECOND-CHANCE ACT AND THE

11   MEMORANDUMS AND GUIDELINES THAT IMPLEMENT THAT, HIS

12   CLASSIFICATION BEGINS THE WHOLE PROCESS OF GETTING HIM READY

13   FOR THE PRE-RELEASE PLACEMENT AS WELL AS ARDAD BEGINS UPON HIS

14   ENTRY IN THE FEDERAL FACILITY, AND IT IS IMPORTANT TO US TO

15   GET HIS CRIMINAL HISTORY CATEGORY AS WELL AS WE CAN, AND I

16   SUBMITTED A MEMO ON THAT ISSUE.

17          THE COURT:  I THINK HIS CRIMINAL HISTORY CATEGORY IS

18   CORRECTLY CALCULATED IN THE PRE-SENTENCE REPORT.  I WILL

19   RECOMMEND TO THE BUREAU OF PRISONS THAT MR. DONAGAL BE

20   DESIGNATED TO THE FACILITY CLOSEST TO THE BAY AREA.

21          I APOLOGIZE.  I NORMALLY HAVE THIS INFORMATION AT MY

22   FINGERTIPS.  MR. DONAGAL, HOW DO I PRONOUNCE LIZETTE'S LAST

23   NAME?

24          THE DEFENDANT:  "JACQUIN."

25          THE COURT:  JACQUIN.  THANK YOU.  MADAM REPORTER,

26   JACQUIN, J-A-C-Q-U-I-N.  LIZETTE IS SPELLED L-I-Z-E-T-T-E.  I

27   WILL RECOMMEND TO THE BUREAU OF PRISONS THAT MR. DONAGAL BE

28   HOUSED IN A FACILITY CLOSE TO THE BAY AREA TO FACILITATE
```

```
 1   VISITATION WITH HIS FAMILY MEMBERS INCLUDING LIZETTE JACQUIN,
 2   TARA HOOD, AND HIS STEP-CHILDREN WHOSE NAMES AREN'T HERE --
 3   SORRY.  THOSE ARE HIS STEP-CHILDREN, AND ALSO HIS CHILDREN
 4   ISAIAH, FATIMA AND JEREMY.  FURTHER MATTERS FOR THE RECORD?
 5            MR. BARRY:  NOTHING FROM THE GOVERNMENT, YOUR
 6   HONOR.
 7            THE COURT:  MR. GARCIA?
 8            MR. GARCIA:  NO, YOUR HONOR.
 9            THE COURT:  MS. GOLDSBERRY?
10            MS. GOLDSBERRY:  NO, YOUR HONOR.
11            THE COURT:  THANK YOU.
12            (WHEREUPON, THE MATTER WAS ADJOURNED.)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

1

2                       CERTIFICATE OF REPORTER

3

4

5

6           I, THE UNDERSIGNED PRO-TEM COURT REPORTER OF THE

7    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

8    CALIFORNIA, 450 GOLDEN GATE AVENUE, SAN FRANCISCO, CALIFORNIA,

9    DO HEREBY CERTIFY:

10          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

11   INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF

12   MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF

13   THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY

14   COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

15

16

17

18

19          /S/

20   _____

     KIM THORPE, CSR
21   CERTIFICATE NUMBER 9318                    DATED: 12-28-15

22

23

24

25

26

27

28